THE TERRITORY OF HAWAII, BY JOSEPH V. HODGSON, ATTORNEY GENERAL OF THE TERRITORY OF HAWAII, *v.* HOWARD CLARKE, AS PRINCIPAL, AND UNITED STATES FIDELITY AND GUARANTY COMPANY, A FOREIGN CORPORATION, AS SURETY ON THE OFFICIAL BOND OF HOWARD CLARKE, AS UNDERCLERK IN THE OFFICE OF THE TREASURER OF THE TERRITORY OF HAWAII.

Nos. 2474 and 2477.

SUBMITTED FEBRUARY 2, 1943.                    DECIDED APRIL 8, 1943.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE BUCK IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY KEMP, C. J.

These appeals are by the Territory of Hawaii. The appeal in number 2474 is from the oral decision of the circuit judge. After that appeal was perfected, the circuit judge filed a written decision and caused a decree to be entered. The appeal in number 2477 is from the decree. The disposition of the appeal in number 2477 will also dispose of the appeal in number 2474.

It is admitted that the defendant, Howard Clarke, from April 1, 1939, to June 7, 1940, was an employee of the Territory of Hawaii, in the office of the treasurer. From April 1, 1939, to about January 1, 1940, he was an "under clerk" and thereafter until June 7, 1940, he was a "corporation clerk." As such employee he furnished the bond upon which action was commenced in the circuit court against him and the United States Fidelity and Guaranty Company, the surety on his bond.

Revised Laws of Hawaii 1935, section 134, provides that the bond of any officer or employee in any government department from whom a bond is required under the authority of this subtitle (said subtitle embraces sections 133 to 146) shall be substantially in the form set forth therein. Section 145 of said subtitle provides that, in every case where bonds for the faithful performance of duty are not required by law of officers or employees in any department, the head of the department may require every such officer or employee to give such bond. Section 146 of said subtitle provides that whenever any such bond shall be required by the head of a department "the amount of the penalty and the conditions of the bond shall be such as the head of the department shall deem proper." The bond given by Mr. Clarke upon which action was brought

was not required by law. The amount of the penalty and the conditions of his bond were therefore prescribed by the head of the department. The conditions of his bond departed from the conditions prescribed by section 134 to the extent of adding thereto the words enclosed in brackets in the following excerpt from the bond sued upon:

"NOW, THEREFORE, if the said HOWARD CLARKE shall faithfully perform all the duties of his office, appointment, position or employment which are now or may hereafter be required, prescribed or defined by law or by any departmental rule or regulation made under the express or implied authority of any statute, or by any order, direction or command of the head of the department, bureau, office or service in which said obligor is engaged or employed, and all duties and acts undertaken, assumed or performed by said obligor by virtue or color of his office, appointment, employment or position, and shall safely keep, promptly pay over to those legally entitled thereto, and faithfully account for all moneys [and/or property of the United States and/or of the Territory of Hawaii] which may come into his possession or control by reason of his undertaking, assuming, performing or doing any of the aforesaid duties or acts, then this obligation shall be void; otherwise it shall be and remain in full force and virtue and may be enforced in any manner or by any proceedings authorized by law."

The Territory commenced a proceeding on the foregoing bond by a motion for judgment as provided by section 144, Revised Laws of Hawaii 1935, against the principal, Howard Clarke, and his surety, United States Fidelity and Guaranty Company. The allegations of the movant charging a breach of the conditions of the bond are, in substance, that during the term of the bond the said Howard Clarke failed and neglected to safely keep, promptly pay over to those legally entitled thereto, to wit,

the Territory of Hawaii, and faithfully account for moneys in the amount of $500 coming into his possession or control by reason of his undertaking, assuming, performing or doing the duties of his office and appointment, and has since failed and neglected to pay over, produce or account for said moneys in the value and amount of $500, although demand has been made that he do so. Demand upon the surety to pay the $500 was also alleged.

The answer of the defendant Clarke admitted his employment and execution of the bond, as alleged, but denied all other allegations of the complaint. The surety company denied all of the material allegations of the complaint.

At the hearing it developed that the moneys which the movant claims Clarke failed and neglected to safely keep, etc., consisted of $100 out of each of four checks for $110 remitted to the treasurer of the Territory by as many foreign corporations, and $100 out of another sum of $110 paid over the counter in cash. Each of said corporations at the time owed the Territory $10 for filing its annual exhibit as of the preceding December 31, and on the succeeding July 1 would owe a license fee of $100 for the next twelve months. It is admitted that out of each remittance and payment of $110 the filing fee of $10 for the annual exhibit was properly accounted for. The litigation was occasioned by the disappearance or loss of the remaining $100 remitted or paid by each of the five corporations under the circumstances hereinafter more fully related.

After a hearing the circuit judge, in his written decision, made the following findings of fact and conclusions of law:

"Howard Clarke entered the employ of the Treasurer of the Territory as under-clerk on April 1, 1939, and was assigned the duties of corporation clerk in January, 1940. In the latter capacity Mr. Clarke was engaged chiefly in

routine clerical work, including the writing out of receipts for corporation fees and the preparing of corporation licenses. He was not authorized to sign receipts nor to issue licenses. Mr. Clarke remained in his employment as corporation clerk until the 7th of June, 1940.

"In March, 1940, the Western Auto Supply Co. paid over the counter to Howard Adams, Second Deputy Treasurer of the Territory, whose duties included those of cashier, $110 in cash, of which $10 was due at the time as filing fee for the corporation's annual exhibit, and $100 would become due on July 1, 1940, for foreign corporation license. Mr. Adams gave the company an official receipt for the $10 and a temporary receipt for the $100, both receipts being signed by him.

"During May, 1940, four checks for $110 each were received at the Treasurer's office from as many corporations, namely, Pressed Steel Car Co., Frye & Co., Electrical Research Products Co., and Perfection Stove Co. Each check included $10 presently due as filing fee for annual exhibit, and $100 to become due on July 1, 1940, for foreign corporation license fee. An official receipt was signed by Mr. Adams for each sum of $10, which receipt bore a notation that $100 was being held until July 1, 1940. Three of these receipts were written out by Mr. Clarke and one by Mr. Kahoopii, the assistant cashier. No official or other receipt was ever issued for the four sums of $100. Each of the four checks was cashed by Mr. Adams from the funds of the Territory and the $10 deposited with the general cash. The four sums of $100, as well as the $100 from Western Auto Supply Co., were placed by Adams or by another at his direction in an unsealed envelope kept in a tray on a movable carriage, to be held until July 1, 1940. This carriage was kept in the inner section of the cashier's cage during business hours, and at night was rolled into the vault. A check-up made

in the latter part of June and into July, by persons in the Treasurer's office, revealed that the $500 from the companies named was missing from the envelope.

"The evidence pertaining to the custody and control of the $500 in question is conflicting. Mr. Adams testified that it was the custom of the office to turn all such funds over to Mr. Clarke, and that the money 'was entrusted to his (Clarke's) custody'. Mr. Clarke testified that there were more checks and cash in the envelope than he had placed there, indicating that others had also placed funds in the envelope; he also stated that as to currency given him from checks cashed by Mr. Adams, he would label it and put it in the envelope, 'all of which took place there in the cashier's cage', and that he never left the cashier's cage with any such cash fees. The Court has observed the demeanor of these two witnesses on the stand and their manner of responding to the questions put to them, and believes Mr. Clarke and does not believe Mr. Adams. As a result, the Court finds that Howard Clarke faithfully performed all his duties as corporation clerk and accounted in the manner required of him for all moneys of the Territory coming into his possession or control."

The appellant has specified as error the following: (a) The court erred in its decision in finding "that the five $100.00 sums were placed by Mr. Adams or by another at his direction into the envelope kept for that purpose in the cashier's cage"; (b) "that Mr. Clarke accounted for all moneys coming into his possession and control"; and (c) that the court erred "in entering its decree denying the motion of the Territory."

From this it will be seen that the only finding of fact which the Territory attacks is the finding quoted in more detail to the effect that the five sums of $100 "were placed by Adams or by another at his direction in an unsealed envelope kept in a tray on a movable carriage, to be held

until July, 1940. This carriage was kept in the inner section of the cashier's cage during business hours, and at night was rolled into the vault." The other two specifications of error attack the conclusions of law.

While it may be said that the findings of fact made by the circuit judge do not include the controlling facts, his conclusions of law may not be set aside if the evidence discloses facts sufficient to sustain them.

We think the controlling facts (which are not controverted) are (a) that there was in force during the period of the bond a departmental rule or regulation which required that such moneys as those involved in this litigation should not be kept by the corporation clerk in his possession but should be deposited by him in the receptacle kept for that purpose in the cashier's cage during the day and in the vault at night, and (b) that the bond in question obligated the respondent Clarke to "faithfully perform all the duties of his * * * employment which are or may hereafter be required * * * by * * * any departmental rule or regulation made under the express or implied authority of * * * the head of the department * * * in which said obligor is engaged or employed * * * ." The import of the established rule or regulation is shown by the following excerpts from the testimony of Mr. H. H. Adams, second deputy treasurer and cashier:

"We have a provision in the office that these fees or moneys collected were not to be left around in the various desks which could be easily broken into if somebody desired. They were put in envelopes and turned over to one of the cashiers to be put in a receptacle that in the evenings was locked up, at night, in the big vault." * * * "they were put in a box and this box was kept in a movable carriage that was wheeled into the cashier's cage during the day and wheeled into the vault during the noon hour and at night, and locked up, and this particular container was kept in there so it would not be in a place where it would

be accessible to anybody." * * * "This box being kept in the cashier's cage, there is a door to the cage and people could pass reasonably close, but they would be outside of the door. Two people are allowed in the cage and actually handle the money and properly appointed to do so, just the two cashiers."

It is pertinent to here observe that no evidence was produced tending to establish that Mr. Clarke failed or neglected to comply with the departmental rule or regulation for the disposition of such moneys, or that, after he had done so by depositing it as required of him, he, with or without authority, removed it or any part of it from the place prescribed by the departmental rule or regulation for its safekeeping and appropriated it or any part of it to his own use. If he should be held liable under these circumstances for the loss or disappearance of the money in question, it would necessarily be on the theory that he obeyed the departmental rule or regulation at his peril, notwithstanding the condition of his bond which required him to "faithfully perform all the duties * * * which are now or may hereafter be required * * * by any departmental rule or regulation * * * of the head of the department * * * in which said obligor is engaged or employed * * * ."

Revised Laws of Hawaii, section 139, provides *inter alia* that "Every bond required or given under the authority of this subtitle, shall be construed to cover all duties required * * * by any departmental rule or regulation or by any direction, order or command of the head of the department * * * and all such duties and acts shall be considered to have been * * * performed or done * * * by specific requirement of statute * * * ." Thus, it appears that the departmental rule or regulation prescribing the duties of office personnel as to the disposition of such moneys having been incorporated in the bond as one of its

conditions, the obligor is entitled to the same protection as a specific requirement of statute would have given him.

The cases relied upon by the Territory do not sustain its position. By reference to *The United States* v. *Prescott et al.*, 44 U. S. 577, 588, cited by the Territory, it will be seen that the conditions of the bond control. Said the court: "The condition of the bond has been broken, as the defendant, Prescott, failed to pay over the money received by him, when required to do so; and the question is, whether he shall be exonerated from the condition of his bond, on the ground that the money had been stolen from him?

"The objection to this defence is, that it is not within the condition of the bond; and this would seem to be conclusive."

In the bond involved in the *Prescott* case there was no condition such as the one here involved and above quoted. As we construe the language of that case, it holds that if the moneys had been stolen as the result of his having acted in accordance with a condition of his bond, he would have been exonerated. In the case at bar it seems quite evident that the loss of the $500 was due directly to the inadequacy of the rule or regulation promulgated by the head of the department for its safekeeping, and that Mr. Clarke disposed of the moneys which came into his possession or control by reason of his employment strictly in accordance with the departmental rule or regulation which was made a condition of his bond. Consequently, we hold that the decree entered by the circuit judge correctly disposed of the case.

The decree appealed from is therefore affirmed.

*J. V. Hodgson*, Attorney General, and *W. D. Ackerman*, Deputy Attorney General, for the Territory.

*R. W. Loomis* for appellee, Howard Clarke.

*Robertson & Castle* and *R. B. Jamieson* for appellee, United States Fidelity & Guaranty Co.

CONCURRING OPINION OF PETERS, J.

I concur in the conclusion that the judgment should be affirmed.

The motion of the Territory alleged Mr. Clarke's appointment as underclerk in the office of the treasurer of the Territory on April 1, 1939; his execution on April 13 following, with the United States Fidelity and Guaranty Company as surety, of the bond upon which the motion was predicated; Mr. Clarke's failure during the term of the bond to safely keep, promptly pay over to the Territory, and faithfully account for moneys in the amount of $500 coming into his possession or control by reason of the performance of the duties of his office and employment, and his, and his surety's, failure to pay the amount claimed to the Territory upon demand.

The conditions of the bond are as follows:

"NOW, THEREFORE, if the said HOWARD CLARKE shall faithfully perform all the duties of his office, appointment, position, or employment which are now or may hereafter be required, prescribed or defined by law or by any departmental rule or regulation made under the express or implied authority of any statute, or by any order, direction or command of the head of the department, bureau, office or service in which said obligor is engaged or employed, and all duties and acts undertaken, assumed or performed by said obligor by virtue or color of his office, appointment, employment or position, and shall safely keep, promptly pay over to those legally entitled thereto, and faithfully account for all moneys and/or property of the United States and/or of the Territory of Hawaii which may come into his possession or control by reason of his undertaking, assuming, performing or doing any of the aforesaid duties or acts, then this obligation shall be void; otherwise it shall be and remain in full force and virtue and may be enforced in any manner or by any proceedings authorized by law."

It is undisputed that five foreign corporations, in payment of foreign corporation licenses exacted of them by the provisions of the Revised Laws of Hawaii 1935, section 6772, and due and payable under the provisions of the Revised Laws of Hawaii 1935, section 2405, on July 1, 1940, paid $100 each into the office of the treasurer (one in March, 1940, and the remaining four in May, 1940.), and that the cash moneys representing these payments have never been accounted for by those having its possession and control, including the respondent Clarke. These moneys disappeared. It is the aggregate of these license fees for which judgment is prayed under the bond.

Although not entirely in accord with the reason assigned by the circuit judge for his denial of the motion, I feel that the result was correct and the order denying the motion should be affirmed. The moneys paid by the foreign corporations in payment of the annual foreign corporation license fees exacted by section 6772, *supra*, unquestionably, upon payment, became government realizations and should have been disposed of as public moneys of the Territory. Under the provisions of section 6772, *supra*, the payment of the annual license fee is a condition precedent to establishing an office in the Territory for the use of the officers, stockholders, agents or employees of the foreign corporation or of its doing any business of any nature whatsoever in the Territory. Under section 2405, *supra*, the annual license fees of foreign corporations are "due and payable in advance on July 1, in each year," with certain exceptions which are not material here. The foreign corporations which made the several payments in question were licensees under licenses expiring June 30, 1940. The issuance of an annual license being a condition precedent to doing business and the payment of the fee therefor being required to be paid in advance, it necessarily follows that the extent by which the time of payment

was voluntarily accelerated by each payer is immaterial so long as the license to which the payment related was sufficiently identified. Payment in each instance was made for the express purpose of paying the foreign corporation annual license fee due upon the succeeding July 1, and in each instance .a temporary receipt was issued expressly reciting that the payment was made for that purpose. Under the circumstances, the disposition of the license fees upon receipt was governed by the law relating to "public moneys" (R. L. H. 1935, § 2201) ; "all moneys paid into the treasury" (§ 2206) ; "money * * * in the territorial treasury" (§ 597) ; "revenue or other moneys on account of the Territory" (§ 563). Unfortunately, however, all moneys paid for foreign corporation licenses prior to their due date (July 1) were received by the office of the treasurer as temporary deposits, temporary receipts being given to the payer, and were not entered upon the books of the treasurer as government realizations until the succeeding July 1. In the meantime the corporation clerk, Mr. Clarke, retained their possession and control subject to the general regulations of the treasurer's office that all moneys received on temporary deposit should not be left about but should be placed in the vault of the office. The practice was that the first deputy treasurer assigned all incoming mail, including checks, to the several clerks of the department whose duties related to the same; that all corporation matters, including foreign corporation license fees, were assigned by the first deputy treasurer to Mr. Clarke for attention; that where checks of foreign corporations included both the statutory filing fee for corporation exhibits, which is $10, and the foreign corporation license fee, the check was cashed by Mr. Clarke and after credit was given to the payer for the filing fee, the $100 cash remaining was retained by Mr. Clarke until July 1 succeeding, to be turned over by him at that time

to one of the deputy treasurers for entry and receipt; that all moneys paid on account of foreign corporation licenses remained in the possession and control of Clarke, subject to the general regulation of the treasurer's office heretofore referred to that the same be deposited in the office vault. Mr. Clarke, it appears, deposited all annual license fees received, whether in check or cash, in an unsealed envelope, appropriately endorsed, and placed the same in an open box provided for that purpose on the shelf of a portable currency carriage, which during the business hours of the day was kept under the counter in the cashier's cage and at the close of business wheeled into the vault. It also appears that other clerks in the office receiving moneys upon temporary deposit similarly as Clarke, deposited such receipts in the same box utilized by Clarke. All clerks having deposits of temporary receipts in the office vault were permitted access to the box upon request of either of the two cashiers who had exclusive charge of the vault and the adjoining cage.

It is undisputed that the foreign corporation which paid the license fee in March paid the same in cash to Mr. Adams, one of the cashiers and the second deputy treasurer, and a temporary receipt was issued by him therefor. While there is no direct evidence upon the subject, there is sufficient to support a finding that Mr. Adams, in turn, transferred the amount received to Clarke. It is also undisputed that the first deputy treasurer assigned to Clarke for attention the four payments for annual corporation license fees paid in May; that each payment was in the form of a check in the sum of $110 to cover the filing fee of the annual exhibit of the corporation, paying the same as well as the annual license fee for the ensuing year beginning July 1; and that these checks were cashed by Mr. Clarke and in each instance, after the deduction of the $10 fee for filing the corporation exhibit, the remaining

$100 in cash was deposited by him in the unsealed envelope in the box in the cashier's cage. There is no evidence that Clarke embezzled the particular annual license fees, damage for the loss of which is sought. In fact no effort was made by the Territory to establish any culpability on Clarke's part. And none has been suggested.

Obviously, the regulations requiring all temporary deposits to be kept in the vault, without more, were woefully deficient. Temporary deposits were numerous and involved other clerks in addition to Clarke. What protection the regulations afforded was neutralized by indiscriminate access. Under the circumstances the Territory failed to show a breach by Clarke of any of the conditions of his bond.

It was argued by the Territory before the trial judge, and it is similarly argued here on appeal, that these annual foreign corporation license fees were government realizations, for the safekeeping and prompt payment of which to those legally entitled thereto and for their faithful accounting Mr. Clarke was absolutely bound, and for his failure so to do, even though himself innocent of any wrongdoing, he and his surety are liable. With this contention I cannot agree. Mr. Clarke was not an officer of the department of the treasury. There is no statutory provision for an office of "underclerk" in that department. His relation to the Territory was purely contractual. He did not represent the treasurer in official acts. He did not possess authority to sign receipts for moneys paid into the office. In the instances to which I have referred, where checks were turned over to Clarke, he made out the appropriate receipts but they were signed by Mr. Adams. His duties were subject to change at the will of his superiors. His duties were not those usually performed by an officer. At best, he was a mere employee and under the express or implied terms of his employment subject to

the orders and directions of the treasurer and his deputies. No statutory provision had been made for the disposition or custody of moneys received by the treasurer upon temporary deposits. The practice of the office indicates that the treasurer or his deputies, upon advice or otherwise, had attached to annual foreign corporation license fees paid prior to due date the legal status of temporary receipts. As far as Mr. Clarke was concerned as an underclerk in the office of the treasurer, the status of temporary receipts as determined by the treasurer or his deputies and the regulations of the department in respect thereto, control. It was not the province of Mr. Clarke to question the judgment of the officers of the treasury as to the legal status of annual corporation license fees paid prior to the ensuing July 1, nor their orders and directions as to the safekeeping thereof. It was incumbent upon him, irrespective of their actual legal status as government realizations, to dispose of the annual foreign corporation license fees turned over to him consistently with the orders and directions of the treasurer or his deputies and the regulations promulgated by him or them in respect thereto. To these annual foreign corporation license fees as temporary receipts, his relation was that of a trustee or bailee. While, as to government realizations disposed of as public moneys of the Territory, the officer or employee entrusted with the safekeeping of the funds assumes the relation of insurer, not so when that relationship is that of trustee or bailee. The obligations of the latter are not so exacting. They are not insurers. They must faithfully execute their trust and act in relation to the funds entrusted to them with due diligence, and are only answerable for negligence or want of ordinary care evidencing bad faith. All that sound public policy requires is good faith and ordinary care. The measure of the care to be exercised by Clarke was prescribed by the general regulation requiring him to

384

keep temporary receipts in the office vault. This, undisputedly, he did. Neither negligence nor bad faith can be imputed to Clarke when it appears that he acted in strict conformity with the regulations governing the subject. Where, as here, it appears that an underclerk has performed the duties of his office as directed, and obeyed the regulations of the office pertaining to the safekeeping of temporary receipts turned over to him by the first deputy treasurer, no liability attaches for their loss in the absence of a showing that he actually embezzled the same.